OPINION ON MOTION FOR DISMISSAL AND RETURN OF CURRENCY
BROTMAN, District Judge.
This is a civil forfeiture action instituted by the United States Government (the “Government”). The Government seeks the forfeiture of $59,074 upon an allegation that the money is “proceeds traceable to the exchange of a controlled substance” punishable by more than one year’s imprisonment. A claim to the currency has been filed by Anthony Parker. Presently before the Court is a motion by claimant parker for: 1) dismissal of the complaint on the grounds that it fails to state a civil forfeiture claim with the requisite particularity; and 2) immediate return of the money.
I. FACTUAL AND PROCEDURAL BACKGROUND
This action arises out of the seizure of currency over two and a half years ago. The Government and claimant agree that the seizure took place on or about September 8, 1994, in Haddon Township, New Jersey.
The Government states in its complaint that Parker was stopped by Haddon Township patrolman Scott Bishop while operating a 1993 GMC Typhoon sport/utility vehicle. Parker asserts that he and a passenger, Terrence Pinckney, were refueling at a service station, and that Bishop walked up to the vehicle after noticing that one of its two license plates was missing.
The Government and Parker agree that during the encounter, Pinckney dropped a bag which contained what appeared to the officer to be, and was subsequently determined to be, marijuana. Parker states that Bishop had asked Pinckney to exit the vehicle and produce identification, and that a “clear plastic baggie containing a small amount of marijuana” fell to the ground from Pinckney’s pocket while he was retrieving his driver’s license. Bishop placed Pinckney under arrest. Parker states that the arrest was for possession of marijuana.
During this time, Parker placed a call to his mother, Carolyn James, who subsequently arrived at the service station. James told Parker that he could consent to a search of the vehicle. The search resulted in Bishop’s seizure of the $59,074 in currency from the back seat. Parker states that the money was in a gym bag.
Claimant asserts, and the Government does not dispute, that the currency was turned over to the Camden County Prosecutor’s Office and deposited into an account at the county treasury. On or about December 13, 1994, the Honorable G. Donald Haneke, United States Magistrate Judge for the District of New Jersey, signed a warrant authorizing the Government to seize the currency. Parker states that the Office of the United States Attorney for the District of New Jersey, together with the Drug Enforcement Agency (“DEA”), conducted an “adoptive seizure” whereby they executed the warrant upon the Camden County Treasurer’s account.[1]
*246 Parker reports that the Government sent him a “Notice of Seizure” on or about April 17, 1995, seeking administrative forfeiture of the currency, and that he properly opposed the administrative forfeiture. On September 20,1995, the Government instituted the present action with the following Verified Complaint of Forfeiture and Verification:[2]
The United States of America, acting by and through its attorney, Faith S. Hoch-berg, United States Attorney for the District of New Jersey, and Yvette Mouton, Assistant United States Attorney, respectfully states as follows:
JURISDICTION AND VENUE
This is a civil action in rem brought to enforce the provisions of 21 U.S.C. § 881(a)(6)[,] which provides for the forfeiture of all proceeds traceable to monies furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et seq.
2. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1345 and 1355.
3. This Court has venue in this matter pursuant to 28 U.S.C. § 1395, in that the defendant currency is now and during the pendency of this action will be in the jurisdiction of this Court.
4. The defendant is United States Currency in the amount of $59,074.00 (hereinafter ‘defendant currency’).
5. On or about May 17,1995, Anthony Parker (hereinafter ‘Parker’), filed a Certification Contesting Seizure of Property and Declaration and Affidavit in Support of Request to Proceed In Forma Pauperis.
6. No other Claims have been filed by any other potential claimants.
FACTS
1.On or about September 8, 1994, Parker was stopped by Haddon Township Police Patrolman Scott Bishop for a traffic violation while he was operating a 1993 GMC Typhoon, New Jersey, [sic] license plate number ADB3455, registered to Carolyn D. James, 2842 Pierce Avenue, Camden, New Jersey.
2. A Check of New Jersey Division of Motor Vehicles record identified ten (10) vehicles registered in the name of Carolyn D. James (hereinafter “James”)[.]
3. During the traffic stop, Parker’s passenger, who identified himself as Timothy Rangel, but who was subsequently identified as Terrence Pinckney (hereinafter “Pinckney”), dropped a bag which contained what appeared to Patrolman Bishop to be, and was subsequently determined to be, marijuana. Pinckney was immediately placed under arrest.
4. During this time, Parker placed a call to his mother, Carolyn D. James[,] who arrived on the scene during the vehicle stop.
5. James advised Parker that he could consent to a search of the vehicle. Thereafter, Parker signed a consent to search form[,] and the subsequent search of the vehicle resulted in the seizure of defendant currency in United States Currency from the passenger’s compartment.
6. Parker advised Patrolman Bishop that the currency belonged to a fried of Par-kers’ [sic]. However, Parker could not remember his friend’s name, only that his friend owned a recording studio in Cherry Hill, New Jersey. Parker also told Patrolman Bishop that he and Pinckney were on their way to Glassboro at the time of the traffic stop.
7. Investigation of Anthony Parker has revealed no apparent employment and no legitimate means of income.
8. Investigation of Terrence Pinckney has revealed no apparent employment and no legitimate means of income.
9. Parker has a previous drug arrest and was the victim of a drug related drive-by shooting.
*247 10. Pinckney has prior drug related arrests and a drug related conviction.
9.[sie] On or about December 13, 1994, United States Magistrate Judge G. Donald Ha-neke, signed a seizure warrant for the defendant currency based on the probable cause that the defendant currency is proceeds of illegal narcotics trafficking.
COUNT I
1. Incorporated herein and made part of hereof are allegations contained in paragraphs 1 through 14[sie] of this Complaint.
2. By reasons of the foregoing, probable cause is believed to exist in that the defendant currency constitutes proceeds traceable to the exchange of a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq,. punishable by more than one (1) year’s imprisonment and is therefore, [sic] subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).
3. WHEREFORE, the United States of America prays that process of warrant in rem issue for the arrest of the defendant currency, that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant currency be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.
FAITH S. HOCHBERG
United States Attorney
By: (s) Yvette D. Mouton
YVETTE D. MOUTON
Assistant United States
Attorney
VERIFICATION
1. I am a Special Agent of the United States Drug Enforcement Administration and have been assigned responsibility for investigating alleged criminal violations by Anthony Parker.
2. I have read the contents of the foregoing Verified Complaint for Forfeiture and the statements contained therein are true to the best of my knowledge, information and belief.
(s) Frederick S. Davis
FREDERICK S. DAVIS
Detective
“Drug Enforcement Administration’’
Pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Government obtained from the Court a warrant for the arrest of the currency on the day it filed its complaint. Parker filed a verified answer on November 1,1995.[3] On or about May 16,1996, Parker served the present motion on the Government. Two months later, on July 17, Parker filed the motion and accompanying briefs in support and in opposition pursuant to Rule 12N of the General Rules for the District of New Jersey.[4] The Court heard oral argument on March 12,1997.
II. DISCUSSION
A. Pleading Requirements for Section 881 Civil Forfeiture Actions
The nation’s Controlled Substances Act authorizes the seizure and forfeiture to the Government of various forms of property associated with illegal narcotics trafficking. As originally enacted in 1970, the Act permitted forfeiture of only the illegal narcotics themselves and the instruments by which they were manufactured and distributed. In 1978, Congress amended the statute to allow for the forfeiture of the following additional types of property:
1) “All monies, negotiable instruments, securities, or other things of value fur *248 nished or intended to be furnished by any person in exchange for a controlled substance” in violation of the Act;
2) “all proceeds traceable to such an exchange [for illicit controlled substances]”; and
3) “all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter ...”
21 U.S.C.A. § 881(a)(6) (West 1981); Joint Explanatory Statement of Titles II and III, 124 Cong. Rec. § 17647 (October 7, 1978), reprinted at 1978 U.S.Code Cong, and Admin. News 9518, 9522 (1979).
This amendment “marked an important expansion of governmental power,” and therefore it is to be construed “with caution.” United States v. 92 Buena Vista Ave., 507 U.S. 111, 121-22, 113 S.Ct. 1126, 1133-34, 122 L.Ed.2d 469 (1993) (plurality opinion). Indeed, “[q]uite plainly, Congress stated that ‘due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent.’ ” United States v. 6109 Grubb Road, 886 F.2d 618, 625 (3d Cir.1989) (quoting Joint Explanatory Statement of Titles II and III, 124 Cong. Rec. § 17647 (October 7, 1978) reprinted at 1978 U.S.Code Cong, and Admin. News 9518, 9522 (1979) (emphasis added)). The scope of Section 881 was substantially expanded by Congress still further in 1984. These amendments made civil forfeiture an even more “powerful tool in the government’s battle against crime.” United States v. One Partially Assembled Drag Racer, 899 F.Supp. 1334, 1340 (D.N.J.1995).
Against this backdrop, Federal courts in circuits across the country have developed exacting particularity standards for Section 881 Government pleadings. The particularity standards are rooted in the Supplemental Rules for Certain Admiralty and Maritime Claims (“Supplemental Rules”), elements of the Federal Rules of Civil Procedure which apply to actions in rem such as civil forfeitures. United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1215 (10th Cir.1986). By its text alone, Supplemental Rule E(2)(a) discourages the notice pleading generally invited in civil actions by Fed.R.Civ.P. 8(a). Specifically, Fed.R.Civ.P. Supp. E(2)(a) demands:
... the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.
Courts have read the rule to direct, first, that the Government’s complaint in a Section 881 action “must contain more than conelusory allegations; although it need not plead evidence, it must plead facts to support its allegations.” Drag Racer at 1340. A claimant must be able to respond to the complaint with more than a general denial. Id.
Moreover, the facts pleaded must be “sufficient to support a reasonable belief that the government can demonstrate probable cause for finding the property tainted.” Id. In determining whether probable cause exists for forfeiture of money pursuant to § 881(a)(6), the Court must be able to look at the aggregate of the facts and find reasonable grounds to believe that the money probably was derived from predicate drug transactions which violated the Controlled Substances Act. United States v. 92 Buena Vista Ave., 937 F.2d 98, 104 (3d Cir.1991), aff'd, 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). There is no need to trace the money to a particular identifiable transaction, but the Government must show that there is a substantial connection between the money and predicate narcotics trafficking. In other words, “the government must put on a two-step proof: first, of the predicate criminal acts, and second, of the direct or indirect connection between the property and the acts.” Drag Racer at 1340-41. While the Government does not have to establish probable cause until trial, it must at least credibly plead a connection between the seized money and the predicate acts at the complaint stage.
*249 The strict application of Fed. R.Civ.P. Supp. E(2)(a) in Section 881 actions “is not merely a procedural technicality, but is, instead, a significant legal rule designed to curb excesses of government power and afford property owners some protection from the harshness of a forfeiture’s attendant sanctions.” United States v. 384-390. West Broadway, 964 F.2d 1244, 1248 (1st Cir.1992). Determined to ensure that civil forfeiture proceedings are carried out scrupulously within constitutional bounds, courts apply the pleading requirements so as to prevent due process problems associated with the government’s holding property for a long period of time without a proper claim to it. Drag Racer at 1340 (citing United States v. 5100 Whitaker, Ave., 727 F.Supp. 920, 924 (E.D.Pa.1989). “Because Congress has supplied the government with one of the most potent weapons in the judicial armamentari-um, the courts must make certain that the government is, at the very least, reasonably precise in its deployment.”- West Broadway at 1248.
B. Sufficiency of the Government’s Complaint
The Government’s complaint in this case is clearly inadequate. First, it does not allege with any particularity any predicate act or acts which violate the Controlled Substances Act. The complaint alleges that, the currency is proceeds traceable “to the exchange of a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq,. [sic] punishable by more than one (1) year’s imprisonment.” Within Title II are myriad provisions addressing distribution of various types of illegal narcotics; the Government’s allegation is hardly particularized with regard to which specific provision of the Controlled Substances Act was allegedly violated. Moreover, the complaint does not clearly state which person or persons are believed to have engaged in predicate narcotics trafficking. The Verification implies that “the suspected criminal trafficker connected to the money is Parker, since the DEA detective who signed it identified himself as having been assigned responsibility for investigating alleged criminal violations by Anthony Parker.” The complaint, however, suggests that the suspect could be Terrence Pinckney. The complaint should clearly specify if the suspect is Parker, Pinckney, both, or someone else. While the Government need not trace the seized money to a particular drug transaction, it must at least establish a substantial connection to a particular alleged narcotics trafficker or traffickers.
The Government has also failed to meet its burden of pleading a substantial connection between the money and any predicate narcotics trafficking. Interestingly, the complaint does not allege that the seized currency is forfeitable under the “exchange” provision of § 881(a)(6), i.e. the provision subjecting to forfeiture all moneys “furnished or intended to be furnished by any person in exchange for a controlled substance” in violation of the Controlled Substances Act. Instead, the complaint pleads probable cause to believe that the currency “constitutes proceeds traceable to the exchange of a controlled substance” (emphasis added). A leading commentator notes that the cash directly acquired in exchange for illegal narcotics is not “proceeds” for purposes of § 881(a)(6), but is instead covered by the exchange provision. If cash acquired in exchange for narcotics is used to purchase other property such as a house, and that property is later sold for cash, that money is “proceeds” for purposes of 881(a)(6). 1 David B. Smith, Prosecution and Defense of Forfeiture Cases ¶ 4.03[4][a] at 4-84, 85 (1996). In pleading for forfeiture under the proceeds provision, then, the Government must give the Court reasonable grounds to believe that it will be able to trace such a connection. .The Government has certainly not done so in its September 1995 complaint. The Government’s brief in opposition to the present motion suggests that in fact the Government is relying on the exchange provision; if this is the case, the complaint must reflect as much.
At oral argument the Government argued that by filing an answer to the complaint, Parker has waived his right to make a particularity argument. The Court disagrees. The fact that Parker has chosen to answer the complaint does not demonstrate *250 that it has met the Section 881 particularity standard. United States v. Premises Known as 1625 S. Delaware Avenue, Civ. A. No. 86-5977, 1989 WL 18848, nn. 2, 4 (E.D.Pa. March 3, 1989).
C. Disposition of the Present Motion
As a general matter, courts give the Government at least one opportunity to amend a Section 881 complaint before considering dismissal with prejudice and return of seized property. Moreover, courts generally deem amended Section 881 complaints to relate back to the date of the original filing, so that it is not necessary to release the defendant property from seizure. Drag Racer at 1338,1342. Claimant in his motion, however, seeks immediate return of the currency. His attorney reiterated this request at oral argument, noting that the money was seized over 2$ years ago.
The period of time which has elapsed since the initial seizure is sufficiently long that the Court must consider if claimant is entitled to dismissal of this action with prejudice as a remedy for undue delay. As a preliminary matter, it is well-settled that “[d]ue process concerns are implicated where there is a delay between the seizure of the property and the postseizure filing of a judicial forfeiture action.” United States v. 92 Buena Vista Ave., 738 F.Supp. 854, 861-62 (D.N.J.1990), aff'd in part and remanded in part on other grounds, 937 F.2d 98 (3d Cir.1991), aff'd, 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). In United States v. $8,850, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), the Supreme Court held that the four-prong inquiry developed in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for Speedy Trial Clause claims also provides the relevant framework for determining whether Government delay in filing a judicial civil forfeiture action was reasonable. Moreover, the Supreme Court suggested that dismissal of a forfeiture action with prejudice might be an appropriate remedy for undue delay. $8,850 at 561 n. 8,103 S.Ct. at 2010 n. 8.
Further, this Court concurs with the view of the Court of Appeals for the Second Circuit and other Federal courts that the Barker inquiry extends not only to the Government’s institution of a civil forfeiture action, but also to the conduct of the action once it has been filed. United States v. Banco Cafetero Panama, 797 F.2d 1154, 1163 (2d Cir.1986); United States v. $12,248, 957 F.2d 1513 (9th Cir.1992). Under this test, “there is a due process violation at some point.” Banco Cafetero Panama at 1163. Application of Barker is particularly important in this case, given that 30 months after seizure of the defendant money, the Government has yet to file a complaint which comes close to meeting the pleading requirements for Section 881 forfeiture actions.
The Barker test requires that the Court examine: 1) the length of delay in the prosecution of this forfeiture case since the initial seizure; 2) the reason for the delay; 3) the claimant’s assertion of his right to a prompt adjudication of his claim; and 4) prejudice to the claimant. See Banco Cafete-ro Panama at 1163. Applying the Barker inquiry to this case, “the overarching factor is the length of the delay.” $8,850 at 565,103 S.Ct. at 2012. As stated above, it has been 2years since Haddon Township officer Bishop seized the defendant currency.
The first component of this interval is the 12-month period from the time of the seizure to the filing of this action. While this delay in filing is not per se unreasonable, 12 months is a substantial period of time. An additional 18 months have passed since the Government filed its deficient complaint. In a case involving $8,850, the Supreme Court found that an 18-month post-seizure delay was “quite significant,” stating that “[b]eing deprived of this substantial sum of money for a year and a half is undoubtedly a significant burden.” $8,850 at 565, 103 S.Ct. at 2012. Clearly, the overall 30-month delay in this $59,000 case is even more significant, and demands substantial justification.
The record is sparse on the other three prongs of the Barker inquiry. This is understandable, in light of the fact that the undue delay issue was not raised until oral argument on the present motion. The Government did address the reason-for-delay prong briefly at oral argument; the Assistant U.S. *251 Attorney now handling this case represented that the Government left a variety of material facts out of the present complaint because of an ongoing criminal investigation which is being “resolved.” The Court sustained an objection from claimant’s attorney to further comments by the Assistant U.S. Attorney about other judicial proceedings related to this criminal investigation.
Given that there are issues of fact concerning the three prongs aside from length of delay, the Court cannot make a determination at this juncture that there has been undue post-seizure delay. While dismissal of this forfeiture action with prejudice might be too extreme a remedy upon a finding of undue delay, see $8,850 at 561 n. 8, 103 S.Ct. at 2010 n. 8, it is certainly not warranted in the absence of such a finding in this case.
III. CONCLUSION
The Government represented at oral argument that it was prepared to amend its complaint quickly if the Court found it deficient. The Court will continue claimant’s motion to dismiss with instructions to the Government to amend its complaint within seven (7) days in a manner consistent with this opinion. If an amended complaint is filed, it will be deemed to relate back to the date of original filing; therefore, it will not be necessary to release the property from seizure. Drag Racer at 1338,1342. Claimant is directed to file an answer to the amended complaint within 20 days after his attorneys are served with it.
Additionally, the Court directs the claimant and the Government to address fully the issue of whether claimant has suffered undue delay in violation of due process, and the question of whether dismissal with prejudice would be an appropriate remedy if the Court does reach a finding of undue delay. Claimant should submit a brief, supported by evidence, on or before April 2, 1997. The Government should then submit a brief in opposition, supported by evidence, on or before April 16, 1997. Claimant should file any reply by April 23,1997.

. Parker's attorneys allege that the adoptive seizure took place because the State of New Jersey had no legal basis to seek forfeiture of the money, in that Parker had not been charged with any offense except for driving without both required license plates. They assert that under New Jersey's forfeiture statute, the State may not commence forfeiture proceedings unless there is an *246 underlying indictable offense. The Government asserted at oral argument that New Jersey's forfeiture statute did in fact permit the County to retain the money.

. The Court is providing the full text of the complaint because it will be useful for the reader in following the discussion in section IX, infra.

. Parker states that he was served with notice of the complaint on October 19, 1995.

. This rule calls on a moving party to submit its motion papers to the Court only after the motion has been fully briefed.